IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HERIBERTO RODRIGUEZ, | § § | |
| *Plaintiff,* | § § | SA-20-CV-00817-ESC |
| vs. | § § § | |
| ANDREW M. SAUL, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | § § § § | |
| *Defendant.* | § § | |

### ORDER

This order concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  On May 19, 2021, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#13], Defendant's Brief in Support of the Commissioner's Decision [#14], the transcript ("Tr.") of the SSA proceedings [#7], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that the ALJ failed to articulate a legally sufficient reason for rejecting all the medical opinions of record and substantial evidence does not support the ALJ's finding that Plaintiff could perform the exertional requirements of medium work.  The undersigned will therefore **VACATE** the Commissioner's decision finding Plaintiff not disabled and **REMAND** this case for further fact-finding consistent with this opinion.

**I. Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#9, #10, #11].

**II. Legal Standards**

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

activity, (2) the claimant has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) the impairment prevents the claimant from performing past relevant work, and (5) the impairment prevents claimant from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).  If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.  *Id.*  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual Background

Plaintiff Heriberto Rodriguez filed his application for DIB on February 23, 2019, alleging disability beginning March 14, 2018.  (Tr. 165–66.)  At the time of his DIB application, Plaintiff was a 58-year-old college graduate with a degree in logistics management with past relevant work as an administrative officer.  (Tr. 165–66.)  Plaintiff had a military career in the U.S. Army for 20 years, which was followed by a civil service career for an additional 20 years.  (Tr. 224.)  The medical conditions upon which Plaintiff based his initial DIB application were post-traumatic stress disorder ("PTSD"), major depressive disorder, spondylosis residuals of herniated nucleus L4–L5, sarcoidosis, sleep apnea, right lower extremity radiculopathy of the femoral and sciatica nerves, left knee stable joint patellofemoral syndrome, right knee stable joint osteoarthritis, and right knee impairment.  (Tr. 203.)  Plaintiff's applications were denied initially on July 9, 2019, and again upon reconsideration on October 3, 2019.  (Tr. 57–87.)

Following the denial of his claim, Plaintiff requested an administrative hearing.  Plaintiff and his attorney Brooke Bure attended the administrative hearing before Administrative Law

Judge ("ALJ") Gordan Momcilovic on March 4, 2020. (Tr. 32–56.) Plaintiff and vocational expert ("VE") Jeffrey Kiel provided testimony at the hearing. (*Id.*)

The ALJ issued an unfavorable decision on March 30, 2020. (Tr. 10–25.) The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 14, 2018, the alleged disability onset date. (Tr. 12.) At step two, the ALJ found Plaintiff to have the severe impairments of lateral compartment chondrocalcinosis/patellofemoral syndrome of the knee, mild lumbar degenerative disc disease and gout (which he found to be severe in combination only), sarcoidosis, PTSD, depressive disorder, and alcohol abuse. (Tr. 12–14.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 14–16.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except all postural activities can be performed occasionally except kneeling and crouching, which can be performed frequently. (Tr. 17–23.) The ALJ further found that the claimant can occasionally interact with the general public and retains the ability to understand, remember, and carry out detailed but not complex job instructions and work-related tasks. (Tr. 17–23.) At step four, the ALJ determined that Plaintiff is unable to perform any of his past relevant work as actually performed.[2] (Tr. 23–24.) Finally, at step five, the ALJ concluded that, considering

---

[2] Although the VE testified that Plaintiff performed his past relevant work at the medium exertional level, because the ALJ assessed Plaintiff with additional postural limitations that

4

Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as janitor and linen room attendant.  (Tr. 24–25.)  Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act, and therefore not entitled to receive DIB.  (Tr. 25.)

Plaintiff requested review of the ALJ's decision, but his request for review was denied by the Appeals Council on April 16, 2020.  (Tr. 1–6.)   On July 14, 2020, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff raises two intertwined points of error in this appeal, both of which challenge the ALJ's RFC determination: (1) the ALJ erred by rejecting every medical opinion of record and instead relying on his own lay opinion to assess a medium RFC, and (2) the ALJ's credibility assessment is defective generally and specifically for his failure to consider Plaintiff's stellar work history.  The heart of Plaintiff's appeal is whether the ALJ erred in departing from the findings of all the medical providers on record that Plaintiff could perform only light work or less and instead concluding, based on his own review of the medical records and assessment of Plaintiff's credibility, that Plaintiff has the RFC to perform medium work.  Plaintiff argues this issue is critical to the ultimate disability determination in this case because if the ALJ had limited Plaintiff to light work, the Medical-Vocational Guidelines ("Grid Rules") would have applied and dictated, due to Plaintiff's age, education, and work experience, a finding of disability.

The Court agrees with Plaintiff that the ALJ failed to articulate legally sufficient reasons for departing from the medical opinions of record and substantial evidence does not support the ALJ's conclusion that Plaintiff could engage in the exertional demands of medium work.

---

prevented him from performing the full-range of medium work, the ALJ determined Plaintiff was unable to perform his past relevant work as actually performed and proceeded to step five.

5

A.     **Medical and Non-Medical Evidence of Record**

The ALJ in this case concluded that Plaintiff has numerous medical and mental conditions that affect his ability to perform work. This appeal, however, concerns only Plaintiff's physical impairments and his exertional capacity as to lifting and carrying. The Court is being asked to evaluate whether the ALJ performed the correct analysis in evaluating the persuasiveness of the medical opinions of record and whether there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff could lift and carry at a medium exertional level. Accordingly, the summary of the medical and non-medical evidence of record here focuses solely on evidence pertaining to these issues, namely evidence and testimony related to Plaintiff's back and knee injuries. (Tr. 203.)

Plaintiff has an approximately 40-year work history between the U.S. Army and his civil service career as an administrative officer. He testified at the ALJ hearing that he was let go from his most recent position due to his PTSD and anxiety. (Tr. 40–41.) Plaintiff testified that he can stand only ten minutes before he needs to sit down and rest due to pain in his back and knees and can only sit in a chair for 20 to 30 minutes before he becomes uncomfortable. (Tr. 42.) Plaintiff stated at the hearing that he can bend down and pick things up off the ground but that the heaviest item he is able to pick up is a gallon of milk in one hand. (Tr. 43.) Plaintiff testified that he used to be a runner, but that he stopped running approximately three months before the ALJ hearing because of his pain. (Tr. 45.)

There are four medical opinions in the administrative record that opine on Plaintiff's exertional capacity as to lifting and carrying, all of which found that Plaintiff can only lift or carry at the equivalent of light work or less, which means the consensus is that, at ***most***, he can lift a maximum of 20 pounds occasionally and ten pounds frequently. Dr. Tyra Tennyson

Francis, one of Plaintiff's primary physicians, completed an assessment in December 2019, the same day she physically examined Plaintiff, and concluded that Plaintiff can never lift any weight of any kind, and therefore would be limited to the equivalent of sedentary work.  (Tr. 821.)   All three of the State Agency Medical Consultants (SAMCs) at the initial and reconsideration levels (Dr. Patty Rowley, Dr. Judy Panek, and Dr. Gregory McMormick) concluded after reviewing the administrative record that Plaintiff can lift and carry only 20 pounds occasionally and 10 pounds frequently, the exertional limitations for light work.  (Tr. 66, 82, 819.)  The SAMCs nonetheless found Plaintiff to be not disabled on the basis that he could still perform his past relevant work, as actually performed.  (Tr. 70, 86.)

The record also contains a consultative examination by internal medicine physician Dr. Douglas Buchanan, which was ordered by the Commissioner as part of the review of Plaintiff's disability application.  (Tr. 781–84.)  Plaintiff reported to Dr. Buchanan at the consultative examination that he has trouble lifting.  (Tr. 781.)  Dr. Buchanan observed Plaintiff being unable to sit up straight in the chair and leaning on his right buttock due to his back injury, as well as found tenderness of the lumbar spine and right sacroiliac joint and a muscle spasm in the L4–5 region on palpation.  (Tr. 783.)  Plaintiff was also unable to perform a heel-to-toe walk or squat and rise; his range of motion was decreased in his lower extremities; and he was observed as walking with an abnormal gait and a right limp.  (Tr. 783.)  Range of motion was normal in his upper extremities, but his grip strength was decreased bilaterally.  (Tr. 783.)  Dr. Buchanan also noted that Plaintiff uses a back brace prescribed by his physician.  (Tr. 783.)  Dr. Buchanan diagnosed Plaintiff with mild lumbar facet arthropathy and spondylosis but found that his visualized soft tissues were "unremarkable."  (Tr. 785.)  Dr. Buchanan did not opine on Plaintiff's specific lifting and carrying capabilities.

**B.	The ALJ's RFC Determination**

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). The relative weight to be given the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

After reviewing Plaintiff's medical records and considering Plaintiff's testimony at the hearing, the ALJ assessed Plaintiff as having the RFC "to perform medium work as defined in 20 C.F.R. § 404.1567(c) except all postural activities can be performed occasionally except kneeling and crouching, which can be performed frequently." (Tr. 17.) Governing regulations define "medium work" as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, as compared to the 20 pounds and 10 pounds applicable to light work. 20 C.F.R. § 404.1567(b), (c). The ALJ further found that Plaintiff "can occasionally interact with the general public and retains the ability to understand, remember, and carry out detailed but not complex job instructions and work-related tasks." (Tr. 17.) Plaintiff takes issue with the first conclusion only.

8

In reaching these conclusions, the ALJ found Dr. Francis's opinion that Plaintiff could perform only sedentary work or less to be unpersuasive because Dr. Francis "did not cite any objective medical evidence to support her opinion" and there are no "treatment notes from Dr. Francis in the record." (Tr. 23.) The ALJ also concluded that Dr. Francis's assessment is inconsistent with the other evidence in the record, which shows no significant treatment and unremarkable exams with regard to the spine and joint. (Tr. 23.) Finally, the ALJ concluded that Dr. Francis's opinion was inconsistent with Plaintiff's own statements regarding his physical and daily activities, which include exercise, traveling, household chores, driving, and shopping. (Tr. 23.)

The ALJ also discredited the opinions of the SAMCs that Plaintiff could only perform light work, concluding these findings were "not consistent with or supported by the longitudinal treatment history and record as a whole," as Plaintiff's physical exams were "relatively unremarkable with regard to the spine and joints" and Plaintiff has "received little treatment for these issues." (Tr. 23.) Additionally, the ALJ noted that Plaintiff had reported, at times, to running up to four miles a day, and at other times, three to four times a week. (Tr. 23.)

**C.     The ALJ erred by rejecting the unanimous opinion of all medical providers of record that Plaintiff has the exertional capacity to perform no more than light work.**

Plaintiff argues that no physician opined that he could perform work at a medium exertional level and, by substituting his own lay opinion for the medical opinions of record to that effect, the ALJ committed reversible error. The undersigned agrees. The ALJ failed to articulate a legally sufficient basis for rejecting the unanimous opinion of all medical providers, examining and non-examining, that Plaintiff could perform work at only a light exertional level or less. By doing so, he violated 20 C.F.R. § 404.1520c and failed to identify substantial

9

evidence in the record to support his departure from the medical providers' opinions as to Plaintiff's lifting and carrying capabilities.

The Social Security Administration recently promulgated a new rule regarding RFC determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed his DIB application on February 23, 2019, the new rule applies. This rule addresses how the Commissioner is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2). The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The Commissioner must articulate how persuasive he finds each of the opinions in the record and explain the consideration of the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The Commissioner may, but is not required to, articulate the consideration of the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and

consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3). In those cases, the Commissioners must articulate the consideration of the other factors.

The ALJ in this case referenced Section 404.1520c in making his RFC determination and conducted an evaluation of the various medical opinions of record centered on the predominant factors of consistency and supportability. In doing so, he concluded that the opinions of Dr. Francis and the SAMCs that Plaintiff could perform no more than light work were not supported by or consistent with the longitudinal treatment history and record as a whole and were therefore unpersuasive. As a result, the ALJ rejected all of the medical opinions of record to conclude based on his own assessment of the medical evidence that Plaintiff was capable of lifting and carrying at the exertional level required to perform medium work—lifting 50 pounds occasionally and 25 pounds frequently throughout an eight-hour workday.

On its face, the ALJ's opinion appears to comport with the requirements of Section 404.1520c. He cited the appropriate regulation; he evaluated the medical evidence for consistency and supportability; and he provided reasons for his conclusion that the medical opinions of record were not consistent with or supported by Plaintiff's medical records. However, upon a closer look at the ALJ's opinion and the records themselves, it is apparent that neither the reasons stated by the ALJ for his findings nor the records he cited provide substantial evidence to support his ultimate conclusion that Plaintiff can perform the exertional requirements of medium work.

As to Plaintiff's lifting and carrying capabilities, the ALJ's analysis focuses on the lack of significant treatment and "unremarkable" exams as to Plaintiff's spine and joints, as well as inconsistent statements by Plaintiff regarding his physical and daily activities. To support these

findings, the ALJ cited to a number of medical records for the proposition that Plaintiff consistently had "unremarkable" physical examinations as to his back and joint impairments.

However, as detailed in Plaintiff's brief, *none* of the record citations noted in the ALJ's opinion describe a back examination or a physical evaluation of Plaintiff's lifting and carrying capabilities. In fact, most of these records do not address Plaintiff's musculoskeletal system at all. For example, the July 2018 record from the Veterans Administration ("VA") Clinic cited by the ALJ does not include record of a physical examination of any kind and contains nothing more than blank entries related to Plaintiff's documented patellofemoral syndrome and lumbar spine condition. (Tr. 504–05.) The other records cited all concern discrete medical issues, such as a medication refill appointment with Dr. Francis in November 2018, at which Plaintiff complained about new right elbow pain and possible tendonitis (Tr. 584), and a sarcoidosis follow-up appointment with the VA pulmonary clinic in October 2017, at which Plaintiff was observed to have a normal gait (Tr. 1151).

Not only did the pulmonary appointment pre-date Plaintiff's alleged disability onset date, but the appointment only focused on an evaluation of Plaintiff's lungs. (Tr. 1151.) That Plaintiff was observed to have a normal gait at this appointment for purposes of evaluating his sarcoidosis is not substantial evidence that he is able to perform lifting and carrying at a medium exertional level. Similarly, that Plaintiff had no observable pain, instability, weakness, or tenderness upon exam of his elbow joint at his appointment with Dr. Francis does not provide substantial evidence for Plaintiff's ability to lift and carry 50 pounds occasionally and 25 pounds frequently throughout the course of an eight-hour workday, given that Plaintiff's lifting limitations relate to impairments of the spine and knee, not his elbow. (Tr. 584.)

The other records cited by the ALJ are equally unilluminating. Records from a May 2019 VA primary care visit for a follow-up, presumably related to Plaintiff's gout, do not address Plaintiff's patellofemoral syndrome or his low-back pain; nor do they contain any findings as to Plaintiff's musculoskeletal system aside from a notation that Plaintiff's gout was stable on the current treatment regimen. (Tr. 886–90.) A March 2019 office visit with Dr. Francis evaluated Plaintiff's left foot only, due to complaints about numbness to that extremity. (Tr. 1162–63.) The final record, from an April 2018 office visit with Dr. Francis, also did not involve any musculoskeletal examination. (Tr. 491.) The ALJ's citation to these records as evidence of "normal" and "unremarkable" exams as to Plaintiff's spine and joints is disingenuous, as these records do not concern an examination of Plaintiff's spine or of those joints (namely the knee) that could impair his ability to work at a medium exertional level. (Tr. 21, 23.) These records do not provide substantial evidence for the ALJ's departure from the medical opinions of record decisively finding Plaintiff can do no more than light work, in light of the records documenting his right limp, use of a cane, decreased range of motion in his lumbar spine, and difficulty doing basic activities—such as using the toilet—due to his back problems. (Tr. 67, 83.)

The *only* comprehensive physical examination of Plaintiff in the record is the consultative examination by Dr. Buchanan. Critically, the ALJ—though discussing Dr. Buchanan's findings generally—did not acknowledge his examination when evaluating the medical opinions of record for supportability and consistency. This was also error, as Dr. Buchanan's findings are consistent with and supportive of the medical opinions of record that Plaintiff only can perform work at the light exertional level or less due to his significant issues with his lumbar spine and joints.

Dr. Buchanan noted Plaintiff's lumbar spine surgery in 1979 and that he has continued to have significant back pain and to suffer from spondylosis since that time.  (Tr. 781.)  VA records document the degeneration of Plaintiff's lumbosacral intervertebral discs and osteoarthritis of the knee and hip.  (*See, e.g.*, Tr. 491.)  Dr. Buchanan observed Plaintiff's inability to sit up straight in his chair and his modifying of his seated position by leaning on his right buttock to manage pain associated with these issues.  (Tr. 781–84.)  Upon physical examination, Dr. Buchanan recorded tenderness of the lumbar spine and right sacroiliac joint, a muscle spasm in the L4–5 region upon palpation, and a positive straight-leg-raise test at 60 degrees bilaterally.  (Tr. 783.)  Plaintiff was observed as being unable to perform a heel-to-toe walk or squat and rise.  (Tr. 783.)  Furthermore, Plaintiff's range of motion was observed upon clinical examination as abnormal everywhere throughout his lumbar spine, and he demonstrated a decreased range of motion and reduced strength in his lower extremities bilaterally.  (Tr. 783, 787.)  He also exhibited an antalgic gait with a right limp.  (Tr. 783.)

X-rays of Plaintiff's lumbar spine and right knee were performed as part of Dr. Buchanan's evaluation, both of which he found to be consistent with his physical examinations.  (Tr. 785, 786.)  Dr. Buchanan diagnosed Plaintiff with spine and knee conditions, including mild lower lumbar facet arthropathy, minimal lateral compartment chondrocalcinosis, and minimal superior patellar osteophyte formation.  (*Id.*)  Comprehensive range of motion testing of Plaintiff's lumbar spine and hips revealed significant impairments in all areas of flexion, adduction, and abduction.  (Tr. 787–88.)  Dr. Buchanan's physical examination and findings are consistent with the findings of the medical providers in the record that Plaintiff's impairments preclude him from performing medium work on a sustained basis.

It is worth noting also that the only other reason provided by the ALJ for rejecting Dr. Francis's opinion that Plaintiff could perform only sedentary work or less is also legally indefensible. The ALJ stated that Dr. Francis's opinion was unpersuasive because Dr. Francis "did not cite any objective medical evidence to support her opinion" and there are no "treatment notes from Dr. Francis in the record." (Tr. 23.) This is a misstatement of the record. Dr. Francis had an ongoing treatment relationship with Plaintiff, and in fact examined Plaintiff on the very same day she prepared her medical opinion and observed Plaintiff as presenting with an abnormal gait. (Tr. 943.) This is consistent with the observations of other providers, who also noted Plaintiff limping and using a cane. (Tr. 783, 834, 836, 1264.)

Finally, the ALJ concluded that medical opinions of record were inconsistent with Plaintiff's own statements regarding his physical and daily activities, which include exercise, traveling, household chores, driving, and shopping. (Tr. 23.) True, Plaintiff's testimony at the ALJ hearing that he has significant limitations in his daily activities (an inability to do yard work and infrequent excursions even to the grocery store, for example) is inconsistent with some of the statements he made at various appointments close in time to the hearing. For instance, Plaintiff reported in February 2020 at a follow-up appointment for his PTSD just weeks before the ALJ's hearing that he was staying active with household chores and yard work and was able to go to stores on the weekends. (Tr. 1263.) Additionally, up to August 2019, Plaintiff told various providers (his pulmonologist and others) he was regularly exercising and running up to three or four times a week. (Tr. 875, 1150.) The ALJ also found it significant that Plaintiff took a cruise in the summer of 2019 with his family to Jamaica and that all of these activities bore on Plaintiff's credibility as to the extent of his impairments. (Tr. 875.)

Neither Plaintiff's waxing and waning capabilities for moderate exercise throughout the relevant period nor his ability to travel to Jamaica for vacation constitutes evidence that he can perform the lifting and carrying requirements for medium work. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("The fact that the plaintiff continues to play handball appears to have weighed heavily with the [ALJ]. It is indeed difficult for a lay person to understand how a person could suffer from disabling heart disease yet play handball for forty minutes every week. But judges, including [ALJs], must be careful not to succumb to the temptation to play doctor."); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Schmidt* with approval). Plaintiff's ability to run three to four times a week at various points during the period of alleged disability, unaccompanied by any medical opinion of record that these activities relate to an ability to perform the exertional qualifications of medium work, is not substantial evidence to support the ALJ's lay assessment that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently.

In summary, because the ALJ failed to articulate sufficient reasons for his departure from the unanimous findings of the medical providers in the record, he violated the requirements of Section 404.1520c, and there is not substantial evidence to sustain his opinion that Plaintiff can do medium work.[3]

**D.  The ALJ's error was not harmless.**

The ALJ's error was not harmless because an RFC determination consistent with the opinions of the medical providers of record could have triggered the application of the Medical-Vocational Guidelines and a finding of disability. An error is not harmless if it affected

---

[3] In light of this finding, the Court need not further address Plaintiff's related point of error that the ALJ's adverse credibility determination was not generally supported by the record and that the ALJ should have specifically addressed Plaintiff's stellar 40-year work history.

Plaintiff's substantial rights and the outcome of the proceedings. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) ("procedural perfection is not required unless it affects the substantial rights of a party").

The Medical-Vocational Guidelines, also referred to as the "Grid Rules," were promulgated to "improve both the uniformity and efficiency" of the step-five determination. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 2 (2008). The Supreme Court has described the purpose of the Grid Rules as follows:

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Heckler*, 461 U.S. at 461–62 (footnotes omitted).

When applicable, the Grid Rules are binding "at all levels of adjudication and appeal." *Delgado v. Barnhart*, 305 F. Supp. 2d 704, 709 (S.D. Tex. 2004) (citing Social Security Ruling (SSR) 82–41, 1982 WL 31389, at *1 (S.S.A. Jan. 1, 1982)). The introduction to the Grid Rules explains that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular [Grid Rule], the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 200.00(a). The Grid Rules are organized in various tables applicable to claimants limited to performing sedentary, light, medium, or heavy work, respectively, as a result of a severe medically determinable impairment; these rules dictate a

finding of "disabled" or "not disabled" depending on the vocational factors of age, education, and prior work experience. *See generally* 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

In this case, the ALJ reviewed the Grid Rules prior to making his step five finding that Plaintiff could perform the work of a janitor or linen room attendant. (Tr. 24.) The ALJ concluded that the Grid Rules did not dictate a finding of disability because Plaintiff was assessed with an RFC for medium work. (Tr. 24.) If the ALJ had determined that Plaintiff could perform only light work or less, in keeping with the medical opinions of record, the Grid Rules would have dictated a finding of disabled. Where a claimant is limited to performing no more than light work and is an individual of advanced age (as here), has a high school education or higher and is able to communicate in English (as here), and lacks transferable skills (as the VE testified here (Tr. 55)), the Grid Rules compel a finding that the claimant is disabled. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 202.06. Whether upon remand the ALJ finds that the Grid Rules are controlling in this case or merely provide persuasive guidance on the ultimate issue of disability, the fact that they could require a finding of disability for someone of Plaintiff's age, education, and experience who is limited to light work illustrates that the ALJ's error was not harmless.

## V. Conclusion

Based on the foregoing, the Court finds that the ALJ failed to articulate sufficient reasons for departing from the unanimous medical opinions of record that Plaintiff could perform work at no more than the light exertional level and substantial evidence does not support the ALJ's conclusions that these opinions were inconsistent with and unsupported by the record. The Court finds these errors were not harmless. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

SIGNED this 1st day of June, 2021.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE